Filed 8/13/25  P. v. Yates CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

THE PEOPLE,

    Plaintiff and Respondent,

v.

DOUGLAS JOHN YATES,

    Defendant and Appellant.

E083447

(Super.Ct.No. INF1800540)

OPINION

APPEAL from the Superior Court of Riverside County.  Steven J. Counelis, Judge.  Affirmed.

Steven S. Lubliner, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Assistant Attorney General, Christopher P. Beesley and Britton B. Lacy, Deputy Attorneys General, for Plaintiff and Respondent.

In this court's prior nonpublished opinion, *People v. Yates* (Jan. 25, 2022, E075152) (*Yates*), we affirmed appellant and defendant Douglas John Yates's conviction

of 20 counts of animal cruelty (Pen. Code,[1] § 597, subd. (b)) but remanded for a new sentencing hearing based on ineffective assistance of counsel. On remand, the trial court imposed the same 14-year eight-month split sentence originally imposed. Defendant appeals contending the court (1) prejudicially erred in failing to order an updated probation report; (2) violated his constitutional and statutory rights to be present, and (3) abused its discretion in imposing a fully consecutive sentence on all counts. We affirm.

## I. PROCEDURAL BACKGROUND AND FACTS

"On June 10, 2017, a search of defendant's storage unit at a facility in Palm Springs revealed several animal cages containing one dead cat and eight others in grave danger and various states of distress. An animal control officer noted that the accumulation of feces in the litter was spilling into the kennels themselves, and opined that the feces had been there for days and days. The storage unit was not climate controlled, it had been rented by defendant on a month-to-month basis beginning May 11, 2017, and the activity log specific to defendant's gate code and access code showed access or activity on June 6, 7, 8, and 9 (three separate times).

"On February 14, 2018, a search of defendant's U-Haul, parked in the back of a parking lot at a motel in Thousand Palms, revealed several crates or kennels containing 12 deceased dogs. Although there were bowls in the kennels, they appeared dirty, and none contained any food or water. There were bags of dog food, but no water, and there

---

[1] All further statutory references are to the Penal Code.

was no temperature control or ventilation. The investigating deputy sheriff opined that the dogs had not died recently and estimated that the kennels had been there for a week. He noted that the dogs had 'very little movement' inside the kennels given their size and some of the kennels housed two or more dogs. Also, all of the kennels' doors were closed, so the dogs would not have been able to walk around inside the U-Haul." (*Yates*, *supra*, E075152.)

Defendant was convicted of 20 counts of animal cruelty. (*Yates*, *supra*, E075152.) On May 26, 2020, the trial court sentenced him to a term of 14 years eight months, which consisted of the middle term of two years on count 1, and consecutive terms of eight months (one-third the midterm) on counts 2 through 20. The court ordered him to serve five years eight months in county jail and granted him mandatory supervision for the remaining nine years of his sentence. On appeal, this court affirmed the judgment, but remanded the matter for a new sentencing hearing based on defense counsel's failure to argue for concurrent sentences and contest the imposition of consecutive sentences. (*Yates*, *supra*, E075152.)

On June 23, 2023, the trial court learned that defendant was not in custody, but "released into the community" on mandatory supervision; his new sentencing hearing was continued. The court ordered "defendant to be present" at sentencing and ordered the probation department to notify him "of his obligation to appear." Defense counsel stated he would also "reach out" and "do what [he could] to get it to probation."

At the continued hearing on July 21, 2023, defendant was present. The trial court had an informal discussion with counsel about its request, and the need, for a sentencing

3

memorandum from the defense.  Noting the vacatur of the original sentence, the court "want[ed] to make sure that there's a clear record as to what . . . positions the defense has for sentencing again," and continued the hearing "to make sure the defense has an opportunity to do so."  In addition to setting filing deadlines for the parties' sentencing briefs, the court explicitly discussed defense counsel's ability to appear on defendant's behalf and the court's ability to sentence defendant without his presence at the hearing given his completion of a section 977 waiver.  Defendant waived his personal presence at subsequent hearings under section 977, subdivision (c).

Following additional continuances, the court set the sentencing hearing for March 1, 2024, and ordered defendant "to be personally present."  Defense counsel stated, "I'll have [defendant] here.  [¶]  . . . I have a good number.  Every time I call now, he's right on the line.  And he'll come when I tell him, so he'll be here."

On March 1, 2024, defendant failed to appear for resentencing.  Defense counsel informed the trial court that defendant "has given me approval to appear 977.  He's waived his presence."  The court then stated, "The Court of Appeal vacated the sentence, gave directions to resentence the defendant anew.  And so I have read and considered the defendant's sentencing brief.  I read and considered the People's sentencing brief.  I was the trial judge, and I'm ready to proceed with my sentence."  Defense counsel stated, "I would waive and submit.  No legal cause."

Having "read and considered the probation officer's sentencing memorandum that was filed on May 26, 2020," the trial court denied probation for the following reasons: (1) the high number of animals killed and their vulnerability as caged animals, (2) the

4

physical and emotional suffering the animals endured, (3) defendant's role as the only active participant who took advantage of a position of trust, (4) his prior convictions for the same conduct, which reflect his animal abuse was "increasing in frequency and seriousness," and (5) his performance on probation "was necessarily poor." Regarding defendant's "ability to comply with reasonable terms of probation," the court was informed that he was homeless, "remained on mandatory supervision," and has no violations nor any allegations of violations.

The trial court proceeded to adopt "all of the aggravating factors identified in the probation report," but found one mitigating factor, namely, defendant suffers from a "mental disease or disorder not amounting to a legal defense." Regarding the factors that affect concurrent or consecutive sentences, the court stated, "[U]nder [California Rules of Court,[2] rule] 4.425, the question is whether or not the crimes and their objectives are predominantly independent of each other, whether the crimes involve separate acts of violence or threats of violence, whether the crimes were committed at different times or separate places rather than being committed mostly at the same time and place, whether there were two broad groups of crimes on two different dates involved. [¶] And in this particular case, the Court will sentence him to consecutive sentences because I do believe that the crimes and objectives were predominantly independent of each other, and each animal was a separate victim, a separate act of violence, though they were all in the same location." The court expressly stated that, had defense counsel at the original trial asked

---

[2] All further rule references are to the California Rules of Court.

for concurrent sentences, it "would have denied that request based upon all the factors under [rule] 4.425." The court believed "the sentence that [it] originally issued remains the appropriate sentence" and defendant "should not be entitled to a discount or any benefit simply because the Court of Appeal found ineffective assistance of counsel by his trial attorney."

Adopting the rationale and reasoning presented in the People's sentencing brief, the trial court imposed the same 14-year eight-month split sentence originally imposed, with defendant serving five years eight months in the county jail, and the remaining nine years on mandatory supervision. (§ 1170, subd. (h).) All fines and fees were permanently stayed except the $300 restitution fine, one $40 court access fee, and one $30 court conviction fee. Defendant appeals.

## II. DISCUSSION

### A. *Failure to Order an Updated Probation Report for Sentencing.*

Defendant contends the trial court prejudicially erred in failing to order an updated probation report prior to the resentencing hearing, given the significant period of time that had passed since the original report was prepared. The People concede error but argue it was harmless.

#### 1. *Further background information*

The probation report, filed May 26, 2020, identified a prior conviction for misdemeanor animal abuse in 2006, similar incidents in 2003, and a pending case out of San Bernardino County. Defendant was not interviewed due to pandemic limitations; he was in jail and probation was unable to accept his collect call. The report found no

6

statutory provisions that limit or prohibit probation, noted that defendant has the ability to comply with reasonable conditions of probation, and identified several factors warranting a denial of probation. Ultimately, the officer recommended a sentence of 14 years eight months under section 1170, subdivision (h), with the last nine years served under mandatory supervision.

At the initial sentencing hearing, defense counsel submitted a pretrial psychological evaluation conducted pursuant to Evidence Code section 1017, along with an American Society for the Prevention of Cruelty to Animals article about animal hoarding. Counsel argued a grant of probation would facilitate defendant getting the help he needed to deal with his psychological issues. According to defense counsel, defendant was not the worst type of animal abuser because his crimes sprang from neglect and a treatable hording impulse rather than intentional maiming or torturing. Although the trial court denied probation, it believed defendant's mental disease or disorder was a mitigating circumstance.

At defendant's resentencing hearing, there was no discussion of an updated probation report, and defense counsel never refiled, or directed the trial court to consider, the reports filed for the initial sentencing hearing. Nonetheless, the court again found the mitigating factor that defendant suffered from a mental disease or disorder not amounting to a legal defense.

2. *Applicable legal principles*

For persons convicted of a felony who are eligible for probation, section 1203, subdivision (b)(1), requires the trial court to order a probation report before judgment is

pronounced. Rule 4.411(a) states that "the court must refer the case to the probation officer for: [¶] (2) A supplemental report if a significant period of time has passed since the original report was prepared." (See *People v. Dobbins* (2005) 127 Cal.App.4th 176, 180-181 (*Dobbins*).) However, since there is "no federal constitutional right to a supplemental probation report," a trial court's error in failing to obtain one "implicates only California statutory law," and the error is reversible only if there were "a reasonable probability of a result more favorable to defendant if not for the error." (*Id.* at p. 182, citing *People v. Watson* (1956) 46 Cal.2d 818, 834-836.)

   *3. Analysis*

   Here, as defendant acknowledges, the judge who resentenced him was the same judge who presided over his trial and his original sentencing hearing. Thus, the trial court was "intimately acquainted with the facts underlying" defendant's convictions, along with his mental disease or disorder. (*Dobbins*, *supra*, 127 Cal.App.5th at p. 183.) The court received defense counsel's recent sentencing brief and was made aware of defendant's homelessness and performance (lack of violations) on mandatory supervision. In resentencing defendant, the court described the lack of any allegation of a violation of mandatory supervision as "good." In exercising his discretion to deny probation, the judge considered the aggravating factors outlined by the probation officer, and identified defendant's mental disease or disorder (not amounting to a legal defense) as a mitigating factor. In addition to articulating its reasons for imposing the same sentence previously imposed, the court adopted the rationale and reasoning presented in the People's sentencing brief and stated, "I believe that the sentence that I originally

8

issued remains the appropriate sentence.· There are no factors for me to change my view on that.· There's no change of circumstances from the defendant."

Nonetheless, defendant contends the lack of an updated probation report was prejudicial because it deprived the trial court of the following:  (1) positive steps (finding work or enrolling in vocational training) defendant had taken under supervision, (2) the probation officer's interview of defendant, (3) counseling programs he had participated in, (4) his social history, and (5) the low-term presumption based on his mental disease or disorder as an enumerated trigger (§ 1170, subd. (b)(6)(A)).  We disagree.

While the probation officer did not interview defendant, Dr. William H. Jones, a clinical psychologist did.  The interview was presented at the original sentencing hearing to the judge who also presided over defendant's resentencing.  Even if a hard copy was not before the court at the time of resentencing, the judge was aware of its contents (including defendant's social history) as evidenced by his acknowledgment of defendant's mental disease or disorder as a mitigating factor.  The court was also aware of the applicable sentencing law.  Absent some evidence to the contrary, we are entitled to presume that more than two years after subdivision (b)(6)(A) was added to section 1170 the trial court knew and considered it when sentencing defendant.  (*People v. Adanandus* (2007) 157 Cal.App.4th 496, 503 ["Absent some evidence to the contrary, we are entitled to presume that 16 months after *Johnson*[ *v. California* (2005) 545 U.S. 162] the trial court knew and applied the appropriate law governing a *Wheeler/Batson* motion."]; *People v. Coddington* (2000) 23 Cal.4th 529, 644 ["As an aspect of the presumption that judicial duty is properly performed, we presume . . . that the court

9

knows and applies the correct statutory and case law"], overruled on other grounds in *Price v. Superior Court* (2001) 25 Cal.4th 1046, 1069, fn. 13.) Even if an updated probation report had addressed section 1170, subdivision (b)(6)(A), nothing in Dr. Jones's report concludes his offenses were solely the result of his childhood trauma.[3] Moreover, as Justice Menetrez observed, the doctor's report "is of almost no probative value because [defendant], when interviewed by Dr. Jones, completely misrepresented the facts of the charged offenses, claiming only that some of his beloved dogs were malnourished and dehydrated because a motel owner had neglected them against [his] will." (*Yates*, *supra*, E075152 (conc. & dis. opn. of Menetrez, J.).)

Furthermore, we do not agree that an updated report that contained current information regarding defendant's "positive steps" taken under supervision, or counseling programs he was enrolled in, would have changed the trial court's decision.[4] As the court stated, "I will indicate this too also, for the sake of defense counsel at the original trial, had that defense attorney . . . asked me for concurrent sentences, I would have denied that request based upon all the factors under [rule] 4.425. [¶] Now, I believe that the sentence that I originally issued remains the appropriate sentence.· There are no

---

[3] Although Dr. Jones opined "the emotional effects of the early loss of his father" makes it "difficult[ for him to] let[] go of his dogs when he is unable to care for them adequately," the doctor stated that when defendant "is not under stress [(unemployed, health issues, and homeless)] his decision making is likely to be more realistic." He further added that defendant's "functioning with the demands of daily life has been deteriorating over about the last 10 years" due to a serious head injury in 2002, three heart attacks in 2014 and 2015, and sleep apnea, all of which indicate a "Major Neurocognitive Disorder."

[4] At the time of the resentencing hearing, defendant was homeless.

10

factors for me to change my view on that.· There's no change of circumstances from the defendant.· He should not be entitled to a discount or any benefit simply because the Court of Appeal found ineffective assistance of counsel by his trial attorney."

Given the trial court's clear statement that it had no intention of placing defendant on probation or sentencing him to a lower term, we conclude it is not reasonably probable his sentence would have been any different had a supplemental probation report been prepared.  (*People v. Watson*, *supra*, 46 Cal.2d at p. 836.)

B.  *Resentencing in Defendant's Absence.*

Defendant contends the trial court violated his constitutional and statutory rights by sentencing him in his absence when he did not waive his right to be present.  We disagree.

1.  *Further background information*

On July 21, 2023, the trial court requested a sentencing memorandum from the defense, and defendant agreed to be sentenced on September 8, or within a reasonable time thereafter, and for the court to sentence him in his absence as long as his counsel was present.[5]  Later, the prosecutor sought clarification as to whether the court would

---

[5]  The following exchange occurred:
"THE COURT:  Do you want to order your client back, or does he want to come on his own accord?
"[DEFENSE COUNSEL]:· We don't need an order.· If he's not here, it will be because something happened.· He's in the hospital, and he said he waives his appearance.· I'll be able to represent that to the Court.
"THE COURT:· Why don't you—if you don't have a 977 on file, why don't you put one on file now—
"[DEFENSE COUNSEL]:  Deal.

*[footnote continued on next page]*

11

sentence defendant even if he is not present.  The court replied, "I need you to waive his presence for the sentencing.· So he has a right to be present for sentencing, but if he's not here and he tells his lawyer he doesn't want to be here, his lawyer can appear for him even at sentencing, and, as a result, he would be waiving his right to be present for sentencing.  [¶] . . . [¶] . . . [B]ut it also means that I'll order his presence through his lawyer back to be remanded, if that turns out to be the ultimate sentence.  [¶]  I'm not prejudging that right now, but that's the mechanism we'll be using."

At the end of the hearing, the trial court confirmed defendant was released on his own recognizance.  After defense counsel informed the court that they would provide the waiver form, the court told defendant, "But it also means, though, because you signed the [section] 977 form, that if your lawyer tells you to return, it's as if I told you to return."  Defendant replied, "Okay."

---

"THE COURT:· —so that that is clear.  [¶]  So, [defendant], you're welcome to come back.
"THE DEFENDANT:· Okay.
"THE COURT:· By signing the form under Penal Code 977, your attorney can appear for you if there's a reason like a medical emergency or some other reason you can't be here.
"THE DEFENDANT:· Okay.
"THE COURT:· But if you're not here and I sentence you, I will order you to return, though, at some point in the future to serve a sentence.
"THE DEFENDANT:· Okay.
"THE COURT:· So it will probably be more efficient for you to be here.
"THE DEFENDANT:· Right.· I plan on it.
"THE COURT:· But your attorney can appear for you if absolutely necessary."

12

On the same day, defendant, his counsel and the trial court signed a Riverside County form entitled, "Waiver of Defendant's Personal Presence (977(c) Penal Code)."**6** On January 19, 2024, following the last request for a continuance to accommodate defense counsel, the court set the sentencing hearing for March 1 and ordered defendant "to be personally present." Defense counsel replied, "I'll have [defendant] here.· No question. [¶] I had told the Court, when I first got the case, I had not reached out to him.· I couldn't find him.· I have a good number.· Every time I call now, he's right on the line. And he'll come when I tell him, so he'll be here."

On March 1, 2024, defense counsel stated his appearance and said, "And [defendant] has given me approval to appear 977. He's waived his presence."

2. *Applicable legal principles*

"A criminal defendant's right to be personally present at trial is guaranteed under the federal Constitution by the confrontation clause of the Sixth Amendment and the due process clause of the Fourteenth Amendment. It is also required by section 15 of article I

---

**6** "The undersigned defendant, having been advised of his right to be present at all stages of the proceedings, including but not limited to presentation of and arguments on questions of law, and to be confronted by and cross-examine all witnesses, hereby waives the right to be present at the hearing of any motion or other proceeding in this cause, including when the case is set for trial, when a continuance is ordered, and following is heard, when a motion for reduction of bail or for a personal recognizance release is heard, when a motion to reduce sentence is heard, and when questions of law are presented to or considered by the court. The undersigned defendant hereby requests the court to proceed during every absence of his which the court may permit pursuant to this waiver, and hereby agrees that his interest will be deemed represented at all times by the presence of his attorney the same as if the defendant himself were personally present in court, and further agrees that notice of his attorney that his presence in court on a particular day at a particular time is required will be deemed notice to him of the requirement of his appearance at said time and place."

of the California Constitution and by sections 977 and 1043." (*People v. Concepcion* (2008) 45 Cal.4th 77, 81.) "This right extends to all '"critical stages of the criminal prosecution"' and includes sentencing and resentencing. . . . [¶] [However, it] may be waived." (*People v. Velasco* (2023) 97 Cal.App.5th 663, 673; see *People v. Nieves* (2021) 11 Cal.5th 404, 508 [A defendant may waive his right to be present at the resentencing hearing, but only if such waiver is voluntary, knowing, and intelligent]; *People v. Davis* (2005) 36 Cal.4th 510, 532 [Defense counsel may waive a defendant's presence, but only if there is evidence that defendant consented to the waiver].)

Section 977, subdivision (b)(2), provides that a defendant may waive the right to be present at a resentencing hearing by written waiver filed with the court, or as follows: "(A) A defendant's personal waiver of the right to be physically . . . present shall be on the record and state that the defendant has been advised of the right to be physically . . . present for the hearing at issue and agrees that notice to the attorney that the defendant's physical . . . presence in court at a future date and time is required is notice to the defendant of that requirement. [¶] (B) A waiver of the defendant's physical . . . presence may be entered by counsel, after counsel has stated on the record that the defendant has been advised of the right to be physically . . . present for the hearing at issue, has waived that right, and agrees that notice to the attorney that the defendant's physical . . . presence in court at a future date and time is required is notice to the defendant of that requirement." (§ 977, subd. (b)(2).)

Whether a defendant has a right to be present at a hearing is a question of law we review de novo. (*People v. Santos* (2007) 147 Cal.App.4th 965, 972.) We review the

14

trial court's factual findings for substantial evidence. (*People v. Reneaux* (2020) 50 Cal.App.5th 852, 863.)

*3. Analysis*

Here, defendant forfeited or waived his right to be present at the resentencing hearing. Initially, he stated his plan to attend his resentencing hearing; however, he simultaneously completed a section 977 waiver and acknowledged that resentencing could proceed in his absence "if there's a reason like a medical emergency or some other reason [he] can't be [t]here." The court explicitly informed defendant of his right to be present and ensured he had no questions about this right or his right to waive his presence. At the resentencing hearing, defense counsel represented that defendant gave him "approval to appear 977" and "waived his presence." Based on the evidence before this court, defendant knowingly and intelligently waived his presence at the resentencing hearing. (*People v. Nieves*, *supra*, 11 Cal.5th at p. 508; *People v. Davis*, *supra*, 36 Cal.4th at p. 532.)

*C. Imposition of a Fully Consecutive Sentence on All Counts.*

Finally, defendant contends the trial court abused its discretion in imposing a fully consecutive sentence on all counts because it exceeds punishment for certain serious and violent felonies, and concurrent sentences are common in animal abuse cases. We find no abuse of discretion.

*1. Applicable legal principles*

Absent an express statutory provision to the contrary, the decision to impose consecutive or concurrent terms is left to the sentencing court's discretion under section

15

669.  (*People v. Valdez* (2011) 193 Cal.App.4th 1515, 1524 [under § 669, a trial court has discretion to determine whether several sentences are to run concurrently or consecutively]; *People v. Woodworth* (2016) 245 Cal.App.4th 1473, 1479-1480 [where a statute "does not contain an express provision depriving the trial court of the discretion afforded to it in section 669," the trial court has "discretion to choose between concurrent and consecutive sentences"].)  The sentencing court's discretion is broad, and "its decision will be affirmed on appeal, so long as it is not arbitrary or irrational and is supported by any reasonable inferences from the record."  (*People v. King* (2010) 183 Cal.App.4th 1281, 1323; see *People v. Clancey* (2013) 56 Cal.4th 562, 578-579 [trial court does not abuse its discretion unless its decision was so irrational, arbitrary or capricious that no reasonable person could agree with it].)

    *2.  Analysis*

    Defendant was tried and convicted of 20 counts of felony animal cruelty in violation of section 597, subdivision (b), which imposes criminal penalties on "whoever, having the charge or custody of an animal . . . subjects an animal to needless suffering, or inflicts unnecessary cruelty upon the animal, or in any manner abuses an animal, or fails to provide the animal with proper food, drink, or shelter, or protection from the weather, . . ."  These offenses involved eight cats discovered in June 2017 and 12 dogs discovered in February 2018.  Previously, defendant was accused of abandoning animals, and he suffered a 2006 conviction for animal cruelty.  While on bail for his present offenses, he was arrested for abusing another 50 animals.  Both probation and the

prosecution recommended fully consecutive terms because each count was a separate act and there were multiple aggravating circumstances.

The trial court imposed the recommended sentence. The court found consecutive sentencing appropriate because "the crimes and objectives were predominantly independent of each other, and each animal was a separate victim, a separate act of violence, though they were all in the same location." We cannot say the court abused its discretion in concluding a full consecutive sentence was warranted. As Justice Menetrez previously observed, the "court sentenced [defendant] to only 5 years and 8 months of incarceration for 20 felonies with multiple aggravating circumstances. [Defendant] will serve the rest of his sentence on mandatory supervision, during which he can get the treatment . . . [he] needs. Nothing in the record supports a more lenient sentence." (*Yates*, *supra*, E075152 (conc. & dis. opn. of Menetrez, J.).)

### III. DISPOSITION

The resentencing order is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER _____
                                                                Acting P. J.

We concur:


FIELDS _____
                        J.

MENETREZ _____
                        J.

17