Filed 11/21/24  P. v. Alvidrez CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ARTHUR ALVIDREZ,<br><br>    Defendant and Appellant. | F086895<br><br>(Super. Ct. No. VCF362309)<br><br>**OPINION** |

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Tulare County.  Antonio A. Reyes, Judge.

Benjamin Owens, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Clara M. Levers and Galen N. Farris, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*] Before Levy, Acting P. J., Meehan, J. and Snauffer, J.

Defendant Arthur Alvidrez was convicted by a jury of 61 sex offenses against four child victims and sentenced to 885 years to life plus a concurrent, determinate term of two years.

On appeal, he argues the trial court violated his right to due process by instructing the jury with CALCRIM 1191B, which permitted the jury to conclude that he had a propensity to commit the other sex crimes charged in this case if it found that any charged sex crime had been proven beyond a reasonable doubt. But he concedes his argument is foreclosed by the Supreme Court's decision in *People v. Villatoro* (2012) 54 Cal.4th 1152 (*Villatoro*), and acknowledges we are bound to follow *Villatoro* under *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450 (*Auto Equity Sales*). He raises this issue to urge the Supreme Court to reconsider *Villatoro*.

He also argues the trial court abused its discretion in imposing full consecutive terms on 24 of the counts. The People concede on this point. We agree with the parties that the trial court abused its sentencing discretion, and accordingly Alvidrez's sentence must be vacated and the matter remanded for resentencing.

### STATEMENT OF THE CASE

In July 2023, the Tulare County District Attorney filed an amended information charging Alvidrez with three counts of oral copulation or sexual penetration of a child 10 years of age or younger (Pen. Code,[1] § 288.7, subd. (b); counts 1, 2, 14), 21 counts of lewd acts on a child under the age of 14 (§ 288, subd. (a); counts 3–13, 52–61), 34 counts of forcible lewd acts on a child under the age of 14 (§ 288, subd. (b)(1); count 15–48), two counts of lewd acts on a child aged 14 or 15 (§ 288, subd. (c)(1); counts 49 & 50), and one count of forcible oral copulation (former § 288a, subd. (c)(2)(B), now § 287, subd. (c)(2)(B); count 51). The information further alleged a multiple-victim special circumstance as to counts 3 through 13, 15 through 48, and 51 through 61.

---

[1] Undesignated statutory references are to the Penal Code.

A jury convicted Alvidrez as charged. On September 21, 2023, the trial court sentenced him to a total term of 885 years to life, concurrent to a determinate term of two years. The indeterminate term consisted of consecutive terms of 15 years to life on counts 1 through 48 and 51 through 61. The determinate term consisted of concurrent terms of two years on counts 49 and 50, which were ordered to run concurrent to the term imposed on count 14.

## FACTS

Given the nature of the issues raised on appeal, we need only briefly summarize the facts of the underlying offenses. Suffice it to say, the trial testimony chronicled a tremendous amount of abuse.

### I. Prosecution's evidence

Alvidrez lived on a ranch in Tulare with his wife. A.A., born in 2005, is Alvidrez's granddaughter. A.A. moved in with her grandparents when she was four or five years old, and she later moved into another house on the property with her father when she was 11 or 12. When she moved into Alvidrez's house, Alvidrez's adopted daughter, M.C., already lived there. M.C. was born in 2003.

Starting when A.A. was four or five years old, and continuing until she was 13, Alvidrez sexually abused her in many ways. When she was four or five years old, he came into her room around bedtime, pulled up her shirt, and kissed her stomach. Between the ages of four or five and 13, he touched her stomach and butt about every day, touched her breasts "an uncountable amount of times" both over and under her clothes, and put his mouth on her breasts more than five times. Beginning at age 8, 9, or 10, he started putting his finger in her vagina weekly and did the same to M.C. Between ages 8 and 13, he put his mouth on A.A.'s vagina more than 20 times. When she was 9 years old, he pressed his penis on her vagina for the first time, and once tried to insert his penis in her vagina.

3.

When M.C. was between 5 and 14 years old, Alvidrez put his mouth on her vagina once or twice a week. He often came into A.A. and M.C.'s room and engaged in sexual conduct with one or both. A.A. and M.C. each witnessed Alvidrez put his mouth on the other's vagina. A.A. also saw M.C. touch Alvidrez's penis with her hand and mouth. Alvidrez would force himself on them. There were at least 10 occasions when M.C. tried to resist, but Alvidrez overcame her resistance and put his mouth on her vagina.

Alvidrez also rubbed his penis against M.C. more than 20 times between age 5 and 13. Also during that period, he touched M.C.'s breasts, kissed her and put his tongue in her mouth, and touched her vagina both under and over her clothes, each more than 20 times. He also rubbed his penis against her vagina a few times a month and forcibly put his penis in her mouth more than 10 times.

Alvidrez has another granddaughter, A.S., born in 1996. Alvidrez began touching her when she was 11. He would hug her, rub her back under her shirt, and rub her inner thigh, leg, and bottom. There were so many instances she could not remember them all. They happened at least once a week when she was 11, once when she was 12, and once when she was 13. The last touching occurred when she was 21.

C.C., born in 2003, was M.C.'s friend. She sometimes spent the night. C.C. saw Alvidrez touch M.C.'s bottom when he hugged her. Alvidrez would greet C.C. with a kiss on the forehead, and once he kissed her on the neck, which made her feel uncomfortable.

The prosecution also presented evidence of abuse that Alvidrez's daughter, L.A., born in 1968, suffered. L.A. told a detective that Alvidrez molested her when she was young and more than once touched her breasts and vagina.

## II. Defense evidence

The defense called the lead detective on the case. He testified that C.C. told him that she never saw Alvidrez being inappropriate with A.A. or M.C. He also testified that another girl who saw Alvidrez kiss C.C. told him that the kiss was "not perverted."

# DISCUSSION

## I.  Propensity instruction

Alvidrez claims the trial court committed reversible error by instructing the jury with CALCRIM No. 1191B on the permissible use of propensity evidence.  We disagree.

The trial court granted the prosecution's request to give CALCRIM No. 1191B, entitled "Evidence of Charged Sex Offenses," which instructed:

> "The People presented evidence that the defendant committed the crimes of Forcible Lewd Act Upon a Child, and Lascivious Act Upon a Child, Forcible Oral Copulation and Sexual Penetration with a Child Under 10 Years that were charged in Counts 1–61.

> "If the People have proved beyond a reasonable doubt that the defendant committed one or more of these crimes, you may, but are not required to, conclude from that evidence that the defendant was disposed or inclined to commit sexual offenses, and based on that decision, also conclude that the defendant was likely to commit and did commit the other sex offenses charged in that case.

> "If you find that the defendant committed one or more of these crimes, that conclusion is only one factor to consider along with all the other evidence.  It is not sufficient by itself to prove that the defendant is guilty of another crime.  The People must still prove each charge and allegation beyond a reasonable doubt."

Alvidrez concedes the California Supreme Court upheld a basically identical instruction in *Villatoro, supra,* 54 Cal.4th 1152.  Although Evidence Code section 1108 is typically used in sex crimes to introduce evidence of *uncharged* sex crimes, *Villatoro* determined "nothing in the language of [that] section … restricts its application to uncharged offenses." (*Id.* at p. 1164.)  To the contrary, Evidence Code section 1108 was broadly intended to allow the jury to consider any evidence of the defendant's propensity to commit sex crimes.  (*Ibid.*)  Thus, *Villatoro* held it was permissible for the jury to consider the defendant's charged offenses in deciding whether he committed other charged sex offenses.  (*Ibid.*)

5.

Alvidrez correctly acknowledges that we, as a lower appellate court, must follow *Villatoro* under *Auto Equity Sales, supra,* 57 Cal.2d at p. 455. He explains he raises and briefs this issue only to preserve it for Supreme Court review. We therefore conclude there was no instructional error.

## II.      Sentencing error

Alvidrez contends the trial court abused its discretion in imposing full consecutive terms on counts 1 through 14 and 52 through 61. He argues the record shows the court erroneously relied on section 667.6 to impose consecutive terms on all counts except counts 49 and 50, even though section 667.6's provisions did not apply to counts 1 through 14 and 52 through 61. The People concede, and we agree.

Alvidrez was convicted in counts 1, 2, and 14 of violating section 288.7, subdivision (b). In counts 3 through 13 and 52 through 61 he was convicted of violating section 288, subdivision (a).

Section 288.7, subdivision (b), states that an offender "shall be punished by imprisonment in the state prison for a term of 15 years to life." It does not require imposing consecutive sentences for violation of the statute.

Section 667.61 mandates a term of 15 years to life for violation of section 288, subdivision (a), if the crime is committed under one of the circumstances specified in subdivision (e) of section 667.61. (§ 667.61, subds. (b) & (c)(8).) One of those circumstances, applicable here, is that "[t]he defendant has been convicted in the present case or cases of committing an offense specified in subdivision (c) against more than one victim."[2] (§ 667.61, subd. (e)(4).) However, section 667.61 does not require imposing consecutive sentences for violation of section 288, subdivision (a), or any other statute.

---

[2] Section 288, subdivision (b)(1) (counts 15 through 48) and section 287, subdivision (c)(2)(B) (count 51) are listed in subdivision (c) of section 661.67. M.A. was the victim in counts 15 through 48 and 51, A.A. was the victim in counts 3 through 13,

6.

Section 667.6, subdivision (c), permits full term consecutive sentences for offenses listed in subdivision (e) where committed against the same victim on the same occasion. But where the offenses are not committed on the same occasion or against the victim, full term consecutive sentences are mandatory. (§ 667.6, subd. (d)(1).) Sections 288.7, subdivision (b), and 288, subdivision (a), are not among the enumerated offenses in sections 667.6, subdivision (e). Thus, sections 667.6, subdivisions (c) and (d), do not apply to violations of sections 288.7, subdivision (b), and 288, subdivision (a).

Absent an express statutory provision to the contrary, the decision to impose consecutive or concurrent terms is left to the sentencing court's discretion under section 669. (*People v. Woodworth* (2016) 245 Cal.App.4th 1473, 1479; *People v. Valdez* (2011) 193 Cal.App.4th 1515, 1524.) "Generally, when the record shows that the trial court proceeded with sentencing on the erroneous assumption it lacked discretion, remand is necessary so that the trial court may have the opportunity to exercise its sentencing discretion at a new sentencing hearing. [Citations.] Defendants are entitled to 'sentencing decisions made in the exercise of the "informed discretion" of the sentencing court,' and a court that is unaware of its discretionary authority cannot exercise its informed discretion." (*People v. Brown* (2007) 147 Cal.App.4th 1213, 1228.) " ' "[A] trial court is presumed to have been aware of and followed the applicable law." ' " (*Id.* at p. 1229.) To overcome the presumption, the record must affirmatively show the trial court misunderstood the law, or at least reveal some significant ambiguity about whether the court applied the correct law. (See, e.g. *People v. Panozo* (2021) 59 Cal.App.5th 825, 839 [remand required because the record was "ambiguous" as to whether court was aware of its statutory obligations].)

and A.S. was the victim in counts 52 through 61. Thus, the multiple-victim circumstance is met here.

Under these principles, we conclude a remand for resentencing is required. The record shows the trial court mistakenly believed section 667.6 applied to the section 288.7, subdivision (b), and 288, subdivision (a), counts. The probation report recommended consecutive sentencing under section 667.6, subdivision (d)(1), on all counts because the crimes were "separate in nature and not arising from the same set of operative facts." The report did not note that 667.6 does not apply to Alvidrez's section 288.7, subdivision (b), and 288, subdivision (a), convictions. At the sentencing hearing, the prosecution urged the court to follow the recommendation in the probation report to impose consecutive terms under section 667.6, subdivision (d)(1). Alvidrez's trial counsel did not argue to the contrary.

The trial court imposed consecutive terms on counts 1 through 48 and 51 through 61 without stating a statutory basis for doing so or providing a statement of reasons. After the court pronounced sentence, the prosecutor stated: "I would just ask that the minute order and the Abstract of Judgment reflect[] the Penal Code Section 667.61(c) and 667.61(d)(1) being the rationale—like, the law in which the defendant was sentenced fully and consecutively." As both parties observe, it appears that the prosecutor must have been referring to section 667.6, subdivisions (c) and (d)(1), and not section 667.61, subdivisions (c) and (d)(1). Section 667.6, subdivision (c) and (d) pertain to consecutive sentencing, while section 667.61, subdivision (c), is the list of one-strike offenses, and section 667.61, subdivision (d)(1), is a one-strike special circumstance for having committed a crime in another jurisdiction. No part of section 667.61 applies at all to consecutive sentencing. Tracking the prosecutor's request, handwritten on the sentencing minute order is, "Sentence is imposed pursuant to PC 667.61(b), 667.61(c), and 667.61(d)(1)."

In sum, the record shows the trial court relied on section 667.6's provisions in imposing consecutive terms on counts 1 through 48 and 51 through 61, even though that

8.

section did not apply to those counts.  We agree with the parties the sentence must be vacated and the matter remanded for resentencing.

## DISPOSITION

The sentence is vacated, and the matter is remanded for resentencing.  On remand, the trial court is directed to exercise its discretion as to whether to impose consecutive or concurrent terms on counts 1 through 14 and 52 through 61.  In all other respects, the judgment is affirmed.